
01/09/2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| JUSTIN BLAKE MCDANIEL | § | Case No. 05-50311 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| TEXAR FEDERAL CREDIT UNION, | § | |
| | § | Adversary Proceeding No. 05-5013 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| JUSTIN BLAKE MCDANIEL, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]**

CAME ON TO BE CONSIDERED the COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT AND/OR OBJECTION TO DISCHARGE (Docket #1) in Adversary Proceeding 05-05013. The Court, having considered the causes of action and issues raised in this adversary proceeding, the arguments of counsel, the evidence presented, and the applicable law, makes the following findings of fact and conclusions of law:

**I. JURISDICTION**

The Court has jurisdiction to issue a final judgment on the causes of action and issues raised in this adversary proceeding pursuant to 28 U.S.C. §§1334(a) and 157(a), and the

---

[1] This Memorandum Opinion is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case, or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

United States District Court for the Eastern District of Texas' Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc. This is a core proceeding pursuant to 28 U.S.C. §§157(b)(I) and (J).

## II. FINDINGS OF FACT

The Defendant initiated the bankruptcy case associated with this adversary proceeding by filing for protection under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on August 16, 2005 (the "Petition Date").

In this adversary proceeding, the Plaintiff seeks [i] denial of the discharge of the Defendant's debts to the Plaintiff pursuant to Bankruptcy Code §523(a)(2); [ii] a denial of the Defendant's discharge pursuant to Bankruptcy Code §§727(a)(2), (5) and/or (7); and [iii] its attorney's fees and costs pursuant to the loan documents and Chapter 38 of the Texas Civil Practice and Remedies Code.

In 2004, the Defendant executed a loan application with the Plaintiff on which the Defendant represented his income to be $2,400.00 per month (equivalent to $28,000.00 per year). The Plaintiff subsequently made four loans to the Defendant during 2004. The Defendant consistently made timely payments on those loans and had never been in default prior to May 6, 2005.

On May 6, 2005, the Defendant executed in writing and delivered to the Plaintiff a Credit Card Request Form for the purpose of obtaining an extension of credit through a revolving credit card. This request form represented the annual income of the Debtor to be $54,000.00 per year.

Subsequent to the Defendant executing and delivering the Credit Card Request Form to the Plaintiff, the Plaintiff issued a credit card to the Defendant with a revolving credit

limit of $3,000.00. The Defendant received this credit card in May of 2005 with a zero balance.

Upon receiving the credit card, the Defendant almost immediately charged the credit card past its $3,000.00 limit. Within only 40 days after receiving the credit card, the Defendant made 30 charges on the credit card to put him over his charge limit. Several of the charges on the credit card were for luxury items and cash advances. In several instances there were multiple charges on the credit card made on the same day.

There were seven charges made on May 18, 2005 (the first day the Defendant used the credit card), including charges at FRC Motorsports for race car parts and at Victoria's Secret of over $100 each. There were four charges made the very next day, including a $123.17 charge at the Courtyard by Marriott in Texarkana and a $1,488.43 charge for jewelry at Gordon's Jewelers (which was later returned and credited back to the account.) There were eleven more charges made within one week of May 18, 2005, including a $698.00 charge at Ramada Plaza Resorts in Florida. There were four charges made on June 6, 2005, including two cash advances totaling $527.00, and a $461.13 charge at FRC Motorsports. On June 10, the Plaintiff took out two cash advances totaling $352.00. Two days later, the Defendant took out another cash advance on the credit card in the amount of $76.00. At that point, the credit card was over its limit and the Defendant filed for bankruptcy protection slightly more than two months later (and slightly outside of the 60-day window for presumption of non-dischargeability for luxury goods and cash advances aggregating over $1,000.00 codified at §523(a)(2)(C) of the Bankruptcy Code.) As of the Petition Date, the Defendant owed $3,393.50 to the Plaintiff for purchases and

cash advances made using the credit card. At the time of trial, the credit card's balance was $3,393.50.

On May 9, 2005, the Defendant executed a loan application (the "Loan Application") with the Plaintiff on which he represented his income to be $4,500.00 per month, which equates to $54,000.00 per year. The information on the Credit Card Request Form and the Loan Application indicated that the Defendant's income had nearly doubled from the amount he represented on his original loan application in 2004. The Loan Application also listed the Defendant's debts to creditors other than the Plaintiff, specifically Chrysler Financial and the Red River Federal Credit Union. The Plaintiff filled in the information on the Loan Application, but the Defendant supplied the financial information that the Plaintiff used. The Defendant signed the Loan Application.

The Defendant has never earned $54,000.00 per year. The Defendant's yearly income for 2003 was $17,132. The Defendant's yearly income for 2004 was $35,682. The Defendant's yearly income for 2005 was $30,750.94.

Even though the evidence indicates that the Defendant received substantial overtime pay during December of 2004 and the first few months of 2005, the amount of overtime pay the Defendant received was insufficient to lead the Defendant to believe that he would make $54,000.00 in 2005. The Defendant was not guaranteed any amount of overtime. There was also a possibility (of which the Defendant was well aware throughout 2005) that his employer, the Red River Army Depot, would be shut down. The Defendant did not believe that he would earn annual pay of $54,000.00 in 2005.

Despite the fact that the Defendant was aware that his annual salary was not $54,000.00, the Defendant completed and signed the Credit Card Request Form on May

4

6, 2005 stating his income to be $54,000.00 per year and the Loan Application on May 9, 2005 stating his income to be $4,500.00 per month (equating to $54,000.00 per year). At that time, the Defendant explained that the higher income was a result of a promotion at the Red River Army Depot, which was false.

After the Defendant executed the Loan Application, the Plaintiff made the following term and installment loans to the Defendant (the "Loans"):

i. Loan No. 107310-04, which was a line of credit with multiple advances, beginning May 9, 2005, and aggregating to the total amount of $45,989.77. This loan was to accrue interest at the rate of 10.95% per annum and be repaid in bi-weekly installments of $462.00 beginning on June 9, 2005. This loan was secured by various items of collateral which have been liquidated with the proceeds having been applied to the debt. The unpaid balance on this loan is $15,257.44 plus accruing interest.[2]

ii. Personal Loan No. 107310-05 dated July 14, 2005 in the amount of $1,800.00 with a maturity date of January 14, 2006 and interest at a rate of 18.0% per annum. The unpaid balance on this loan is $1,800.00 plus accruing interest.

iii. Loan No. 107310-06 dated June 23, 2005 in the original amount of $34,281.98, secured by a GMC pick-up truck (the "Truck"). This loan was to accrue interest at the rate of 16.35% per annum and was to be repaid in bi-weekly installments of $350.00 beginning August 4, 2005. The collateral for this debt has been liquidated and the proceeds applied to the debt. The unpaid balance remaining on this loan is $7,484.18 plus accruing interest.

The Plaintiff asserts that the Defendant procured these Loans through his intentionally false representation regarding his income on the Loan Application.

The Plaintiff performed a credit check to determine the Defendant's creditworthiness before extending additional credit based on the information in the Credit Card Request Form and the Loan Application. The Plaintiff never requested pay stubs, W2 forms, or any other information verifying the Plaintiff's nearly 100% pay increase from 2004 to

---

[2] One of the items of collateral, a "4-Wheeler" all-terrain vehicle, was stolen. The insurance proceeds have been turned over to the Plaintiff and applied to the debt.

2005. The Plaintiff relied solely on the credit check and the amount of income the Plaintiff represented in his Credit Card Request Form and his Loan Application.

The Plaintiff presented no evidence of its customary practice in determining how much money to loan to an applicant. The Plaintiff presented no evidence of industry custom for determining how much money to loan to an applicant. The Plaintiff simply presented testimony that it relies on a "budget," but did not show what this budget was, how it was calculated, or how an applicant's income figured into such calculation.

The Plaintiff did not reasonably rely on the Defendant's written misrepresentation regarding his financial condition when making the Loans to the Defendant. Although there were previous business dealings between the Plaintiff and the Defendant that could have reasonably led the Plaintiff to trust the Defendant, the nearly 100% increase in the Defendant's stated income from the Red River Army Depot still raised a "red flag" that should have triggered an investigation into the Defendant's income. *See In re Coston*, 991 F.2d 257, 261 (5th Cir. 1993) (citation omitted). Indeed, in this case, the very fact that the parties had prior business dealings in which the Defendant had represented his income as being almost half of what he represented on the May 9, 2005 Loan Application gave rise to the "red flag" in this case. The Plaintiff ignored this red flag and did not take sufficient steps to verify the Plaintiff's income. Therefore, the Plaintiff's reliance was not reasonable.

## III. CONCLUSIONS OF LAW

**A. Burden of Proof**

The Plaintiff bears the burden of proving the non-dischargeability of a debt under §523 of the Bankruptcy Code by a preponderance of the evidence. *Grogan v. Garner*,

498 U.S. 279, 286, 11 S.Ct. 654, 112, L.Ed.2d. 755 (1991). The Plaintiff also bears the burden of proof on its objection to discharge under §727 of the Bankruptcy Code by a preponderance of the evidence. FED. R. BANKR. P. 4005; *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992) (citing *Grogan v. Garner*, 498 S.Ct. at 660). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start. *In re Hudson*, 107 F.3d 355, 356 (5th Cir. 1997). Without satisfactory proof of each element of a cause of action, judgment must be entered for the Defendant.

**B. Section 727(a)**

The Plaintiff has failed to sustain its burden of proof with respect to the §§727(a)(2), (5) and/or (7) counts. Section 727 of the Bankruptcy Code provides that the Court must grant a discharge to a Chapter 7 debtor unless one or more of the specific grounds for denial of a discharge listed in paragraphs (1) through (10) of §727(a) is proven to exist. Section 727(a)(2) of the Bankruptcy Code is intended to prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing or otherwise disposing of assets. This provision states in pertinent part as follows:

> [t]he court shall grant the debtor a discharge, unless . . . the debtor, with intent to hinder, delay or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed (A) property of the debtor within one year before the date of the filing of the petition; or (B) property of the estate, after the filing of the petition.

11 U.S.C. §727(a)(2). The Court finds, based on a preponderance of the evidence, that no such transfer, destruction, mutilation or concealment took place. Therefore, the Plaintiff cannot sustain a cause of action under §727(a)(2) of the Bankruptcy Code.

Section 727(a)(5) of the Bankruptcy Code states that a debtor will be denied a discharge when "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. §727(a)(5). Here, the Plaintiff satisfactorily explained that his 4-Wheeler was stolen and turned over the insurance proceeds to the Plaintiff. Therefore, the Defendant's discharge should not be denied pursuant to §727(a)(5) of the Bankruptcy Code.

Section 727(a)(7) of the Bankruptcy Code provides that "the Court shall grant a debtor a discharge, unless - … the debtor has committed any act specified in paragraph (2), (3), (4), (5) or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider." 11 U.S.C. §727(a)(7). Here, the Plaintiff has failed to show that there was any violation of §727(a) of the Bankruptcy Code committed in connection with another bankruptcy case. Therefore, the Defendant's discharge should not be denied pursuant to §§727(a)(2), (5), and/or (7) of the Bankruptcy Code, and the Court will enter judgment in favor of the Defendant on the §727 counts.

**C. Section 523(a)(2) - Non-Credit Card Loans**

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge debts accrued "for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. §523(a)(2)(A). In support of this cause of action, the Plaintiff asserts that the Defendant submitted a false Loan Application and made false statements regarding his purported

8

pay increase. These representations constitute statements respecting the Defendant's financial condition within the meaning of §523(a)(2) of the Bankruptcy Code. *See In re Van Steinburg*, 744 F.2d 1060, 1060-61 (4th Cir. 1984). Accordingly, §523(a)(2)(A) is inapplicable to the Loans allegedly made in reliance on the Defendant's misrepresentation of his financial condition.

A debt is non-dischargeable pursuant to §523(a)(2)(B) of the Bankruptcy Code if the Defendant obtained money, property, services or an extension of credit by use of a statement in writing that (1) is materially false; (2) respecting the Defendant's financial condition; (3) on which the Plaintiff reasonably relied; and (4) that the Defendant caused to be made or published with intent to deceive. 11 U.S.C. §523(a)(2)(B).

The Plaintiff has proven the first, second and fourth elements of the §523(a)(2)(B) count. The Defendant used the written Loan Application to obtain money from the Plaintiff. The Defendant's representation in the Loan Application constitutes a written representation regarding his financial condition which was materially false. *See In re Barron*, 126 B.R. 255, 259 (Bankr. E.D.Tex. 1991). The Defendant's written misrepresentation in the Loan Application of his financial condition was made with the intent to deceive the Plaintiff. The Defendant caused the misrepresentation of his financial condition to be made and published within the meaning of §523(a)(2)(B)(iv).

However, the Plaintiff has failed to prove the third element. A bankruptcy court's determination regarding the reasonableness of a creditor's reliance under §523(a)(2)(B) of the Bankruptcy Code is a matter of fact. *In re Coston*, 991 F.2d 257, 260 (5th Cir. 1993). Whether a creditor's reliance on a misrepresentation is reasonable is to be determined from the totality of the circumstances. *In re Young*, 995 F.2d 547, 549 (5th

Cir. 1993). "The bankruptcy court may consider, among other things: whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations." *In re Coston*, 991 F.2d at 261.

Although there were previous business dealings between the Plaintiff and the Defendant that could have reasonably led the Plaintiff to trust the Defendant, the nearly 100% increase in the Defendant's stated income from the Red River Army Depot within a short time-frame still raised a "red flag" that should have triggered an investigation into the Defendant's income. *See In re Coston*, 991 F.2d at 261 (citation omitted). Indeed, as discussed *supra*, the very fact that the parties had prior business dealings in which the Defendant had represented his income as being almost half of what he represented on the May 9, 2005 Loan Application gave rise to the "red flag." The Plaintiff ignored this red flag and did not take sufficient steps to verify the Plaintiff's income, which could have easily been done with a W-2 Form or a pay stub. Therefore, the Plaintiff's reliance was not reasonable.

Because the Plaintiff did not reasonably rely on the Defendant's misrepresentations, the Defendant's debt to the Plaintiff for Loans Nos. 107310-04, 05, and 06 will not be excepted from discharge pursuant to §523(a)(2)(B) of the Bankruptcy Code.

**D. Section 523(a)(2) - Credit Card Debt**

In the context of credit card transactions, the Fifth Circuit has held that the purchase of goods on credit by a debtor who does not intend to pay for them can constitute a false

10

representation under §523(a)(2)(A). *In re Mercer*, 246 F.3d 391 (5th Cir. 2001). In *Mercer*, the Fifth Circuit set forth the standard to be applied in determining the non-dischargeability of credit card debts.

Each use of a credit card constitutes, as a matter of law, an implied representation by the debtor to the credit card issuer of intent to pay the debt incurred. *Id.* at 407 (citation omitted). Each time a card holder uses a credit card, the cardholder is making both a request to the credit card issuer for a loan against a line of credit and a promise to pay such loan. *Id*. at 405. These promises are implied by the very nature of the transaction and these implied promises to pay are representations under §523(a)(2)(A). *Id*. at 405-06 (citations omitted).

In order for the credit card charges to be non-dischargeable, the Defendant's representations must have been knowingly false when made. In the credit card dischargeability context, "[t]he card-use representation of intent to pay is false if there is use without that intent." *Id.* at 408 (citations omitted). In other words, "[a] misrepresentation [of the intent to repay] is fraudulent if the maker . . . knows or believes . . . the matter is *not* as represented, or does *not* have the confidence in the accuracy of his representation as stated or implied, or knows . . . he does *not* have the basis for his representation as stated or implied." *Id.* at 407 (citation omitted). In *Mercer*, the Fifth Circuit acknowledged that "[a] debtor rarely will admit card charges are incurred with the intention of *not* paying it; therefore a creditor may rely on circumstantial evidence to prove the debtor's state of mind at card-use." *Id.* at 409 (emphasis in original).

To determine the debtor's subjective intent, the Fifth Circuit endorsed the factors adopted by the Ninth Circuit Bankruptcy Appellate Panel in *In re Dougherty*, 84 B.R.

11

653, 657 (B.A.P. 9th Cir. 1988), which are: (1) the time between card usage and the bankruptcy filing; (2) whether the debtor consulted with a bankruptcy attorney prior to using the card; (3) the number of charges; (4) the amount of the charges; (5) the debtor's financial condition at the time the charges are made; (6) whether the credit limit was exceeded; (7) whether multiple charges were made on the same day; (8) whether the debtor was employed or had employment prospects at the time of the charges; (9) the debtor's financial sophistication; (10) whether the debtor's buying habits suddenly changed; and (11) whether luxuries or necessities were purchased. *Id.* at 408. These "factors are nonexclusive; none is dispositive; nor must the debtor's conduct satisfy a minimum number to constitute fraudulent intent." *Id.* (citation omitted).

Because of (1) the amount of the charges the Defendant made to the credit card in this case (2) in such a limited time-frame (3) in such close proximity to the Defendant's bankruptcy filing (4) on so many luxury goods and cash advances (5) after the Defendant materially misrepresented his income in order to receive the credit card, the Court finds that the Defendant made the charges to the credit card without the intent to repay them. Therefore, pursuant to *Mercer*, the Defendant made knowingly false representations of his intent to repay the Plaintiff each time he made a charge to the credit card.

In *Mercer*, the Fifth Circuit held that if the court determines that the implied representation of use was knowingly false, then, as a matter of law, the requisite intent to deceive is also present. *Id.* at 411 ("*[I]f* the bankruptcy court finds that, by card-use, [the debtor] made a knowingly false representation of intent to pay, then the separate requisite *intent* to deceive is also present") (emphasis in original). Accordingly, the Court finds

12

that the Defendant possessed the requisite intent to deceive with respect to the credit card charges in this case.

Actual reliance is established as a matter of law if the Plaintiff extended a loan to the Defendant upon his request. *Id.* at 415-16. "In sum, an issuer usually will be able to establish *actual* reliance by showing it would *not* have approved the loan in the absence of [the] debtor's promise to pay (through card-use)." *Id.* (emphasis in original). Having honored the Defendant's request to pay and having actually paid the merchants according to the Defendant's instructions at card use, the Plaintiff has established actual reliance.

To establish fraud, false pretenses, or a false representation, the Plaintiff must show that its reliance on the Defendant's representations was justifiable as well as actual. *Id.* at 411. Reliance is justifiable "if the *existence* of the intention is *material* and the [credit card] issuer has *reason to believe* it will be carried out." *Id.* at 416 (emphasis in original) (citation omitted). In the context of credit card transactions, "the [credit card] issuer *justifiably relies* on a representation of intent to pay as long as the account is *not* in default and any initial investigations into a credit report *do not raise red flags* that would make reliance unjustifiable." *Id.* at 421 (emphasis in original) (citations omitted). Justifiable reliance in this case is satisfied by the Plaintiff checking the Defendant's credit report before issuing the credit card, which report did not raise any "red flags." Further, when the Debtor's wages were approximately $2,400.00 per month, the Defendant had obtained prior loans from the Plaintiff in similar amounts and had paid those loans off. Given that the credit card limit was similar in amount to prior loans, the Defendant had paid the prior loans, and the credit report did not raise any red flags, the Plaintiff's reliance was justifiable.

13

The final element that the Plaintiff must prove to establish non-dischargeability of the credit card charges is that it suffered damages as a result of its reliance on the Defendant's representations. Since the Court has already determined that (i) the Defendant fraudulently misrepresented, by implication, his intent to repay the loans, (ii) the Plaintiff actually and justifiably relied on those misrepresentations, and (iii) the amounts have not yet been repaid, the Court finds that the unpaid credit card balance is non-dischargeable. *Id.* at 425 ("If the bankruptcy court finds [the debtor] fraudulently misrepresented her intent to pay *and* [the creditor] justifiably relied on that misrepresentation, *then*, as a matter of law, [the creditor's] loss (unpaid loan) resulted from the reliance") (emphasis in original) (citation omitted). Pursuant to *Mercer*, the Court concludes that the Plaintiff suffered losses in the amount of $3,393.50 as a result of its reliance on the Defendant's fraudulent misrepresentations of his intent to repay the credit card charges.

### E. Attorney's Fees

Each party to this adversary proceeding will bear its own attorneys' fees and costs.

### IV. CONCLUSION

The Plaintiff has not sustained its burden of proving that the Defendant should be denied a discharge of its debts pursuant to §727 of the Bankruptcy Code. The Plaintiff has not sustained its burden of proving that the Defendant's non-credit card debts to the Plaintiff are non-dischargeable pursuant to §523 of the Bankruptcy Code. The Plaintiff has sustained its burden of proving that the Defendant's credit card debt along with associated interest, fees and costs allowable under applicable law are non-dischargeable

pursuant to §523(a)(2)(A) of the Bankruptcy Code. A separate judgment will be entered consistent with these findings of fact and conclusions of law.

Signed on 1/9/2007

*Brenda T. Rhoades*   MD

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE